PICKETT, Judge.
This is an action in tort by Major General Stephen G. Henry, Sr., against Dr. E. Edward McCool, Jr., a physician and surgeon of Baton Rouge, Louisiana, and his insurer, St. Paul Fire and Marine Insurance Company. The suit is for damages on account of the alleged negligence or malpractice of plaintiff’s physician, Dr. E. Edward McCool, Jr., in his alleged failure to take x-rays of plaintiff’s injured hand, and otherwise evaluate the extent of the injuries and properly treat his band. The plaintiff specifically alleged that there was a dorsal dislocation of the middle joint of the long and ring fingers of the left hand; and that Dr. McCool failed to exercise due care, skill and competence in reducing the dislocation of the joints of his fingers and applying the splints; by negligent application of the splints to his fingers; by negligent removal of the splints and failure to exercise reasonable care, skill and competence in not taking further procedures in the treatment of plaintiff’s injured fingers; and failure to timely take additional x-rays. The plaintiff specially pleaded the doctrine of res ipsa loquitur. The defendants denied liability, and alleged that Dr. McCool used every professional skill, care, and attention in connection with his treatment of plaintiff; and that by all standards, the professional skill and care given plaintiff by Dr. Mc-Cool conformed to the customs, procedures and practices of other physicians in the Baton Rouge area. The defendants alternatively plead contributory negligence on the part of plaintiff by his failure to seek timely medical attention; and in his failure to cooperate with the treating physician.
After a trial on the merits, the lower court rejected the plaintiff’s demands and dismissed his suit at his cost. The plaintiff has appealed.
On the night of October 20, 1969, the plaintiff returned home from a dinner party, and in getting out of his automobile, fell and struck his left hand on the edge of the concrete driveway and injured the middle and ring finger of his left hand. The plaintiff did not think the injuries were serious enough to call a doctor; and he undertook to treat the injuries himself. However, his hand became swollen and because of increasing pain, he consulted the defendant, Dr. E. Edward McCool, Jr., on October 24, 1969, at the Baton Rouge Clinic. Dr. McCool found marked swelling, redness and dorsal dislocation of the middle joint of the third and fourth fingers of plaintiff’s left hand. Dr. McCool, also, found an infected gaping laceration with much exudate extending into the joint capsule on the palm side of the middle joint of the third finger. The dislocation of the middle joints of the fingers were confirmed by x-ray reports. A small chip fracture was found to be separated from the base of the middle joint of the middle finger. He explained to plaintiff the seriousness of his injuries, and the danger of stiffness of the fingers resulting, even in *736 the absence of infection and an open wound. The left hand and fingers were thoroughly cleansed and necessary medication applied. Reduction was carried out of both fingers and they were splinted with aluminum and sponge rubber splints in such a fashion that the interphalangeal joints were maintained in moderate flex-ion. Plaintiff was then administered a tetanus shot and given a broad spectrum of an antibiotic known as Panalba, in the hope of eradicating the infection. He was advised to return in one week. On October 31, 1969, plaintiff returned to Dr. McCool, who found the reductions of both fingers were maintained in good position and the wound of the middle finger was healing satisfactorily. The wound was redressed and the middle finger resplinted. Plaintiff saw Dr. McCool again on November 14, 1969, at which time the old infected laceration was found to have healed satisfactorily, and the splints were removed. No x-rays were taken at that visit. Physical therapy was recommended for the affected fingers, and detailed instructions of how to carry out the suggested therapy were given. Dr. McCool requested plaintiff to return to see him in three weeks unless he should experience some difficulty, in which event he should return to see him at any time. However, the plaintiff never returned to see Dr. McCool.
Thereafter plaintiff sought treatment at the England Air Force Base at the Veterans Hospital at Pineville, Louisiana, but no treatment was given. Two of plaintiff’s classmates referred him to Dr. McMains of Baton Rouge. On November 28, 1969, he consulted Dr. McMains who referred him to Dr. Daniel Clifford Riordan, an orthopedic specialist of New Orleans, Louisiana. Dr. McMains made an appointment by telephone with Dr. Riordan for plaintiff, who immediately went to see him. Dr. Riordan found marked swelling of the middle joints of the middle and ring fingers of the left hand, and he found dorsal dislocations of those joints. Dr. Riordan felt that no closed reduction of the dislocations could be made. The plaintiff was admitted to Touro Infirmary,, and an open operation was performed to reduce the dislocations of the middle joints of the affected fingers, on November 30, 1969. Plaintiff was discharged from the hospital December 2, 1969. Dr. Riordan saw plaintiff on December 8, 1969 and, finding that his fingers were healing satisfactorily, referred him to Dr. McMains for follow up treatment. Dr. Riordan, during the operation for the reduction of the dislocations, had put a pin, called a Kirschner wire, across the joint of each finger to hold the reduction. He removed these pins under local anesthesia in his office on December 29, 1969. Plaintiff was then referred to Dr. McMains for further treatment.
In this appeal, the plaintiff alleges negligence and incompetence on the part of Dr. McCool which will make him liable for the subsequent problems encountered by plaintiff. Basically, the plaintiff claims that Dr. McCool’s failure to take periodic x-rays was actionable negligence and was a failure to exercise due care, skill and competence. Furthermore, the plaintiff claims that the failure of Dr. McCool to reduce the dislocations of the middle joints of the middle and ring fingeir of plaintiff’s left hand and his negligent application of the splints to plaintiff’s fingers constituted a lack of due care, skill and competence, all of which contributed to plaintiff’s permanent residual disabilities.
The malpractice law of this state was set forth by the Supreme Court in the case of Meyer v. St. Paul Mercury Indemnity Company, 225 La. 618, 73 So.2d 781, as follows:
“A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or local *737 ity, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case.”
The Supreme Court followed the above cited malpractice law in Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100.
Four medical experts, Doctors Francis C. McMains, Daniel C. Riordan, Moss M. Bannerman and Charles McVea, in addition to the defendant, Dr. McCool, testified in this case. They were all in agreement that in this case an open reduction of the dislocations of the finger joints should not have been made after infection had set up in the laceration. They were uniform in that the matter of first importance was to control the infection, and that an open reduction should not have been undertaken until some six weeks following the initial injury. The plaintiff was first seen by Dr. McCool four days after the initial injury; and all the medical testimony was to the effect that this factor limited the method of treatment. The plaintiff’s own witness, Dr. Daniel C. Riordan, in answer to a question about what the primary concern four days subsequent to the initial injury should be, testified that it should be the treatment of the infection and that the reduction of the dislocations should be secondary. He further testified that in the presence of an infected open wound, that an open reduction should not be undertaken. Only one attempt should be made to remedy the dislocations by closed reduction. Dr. McCool did attempt a closed reduction, after having first taken x-rays to confirm the diagnosis of dislocations and fractures. The other medical experts were of like opinion that after the lapse of four days from the initial injury that only one attempt should be made to manipulate the dislocations.
Although some of the evidence indicates that other physicians might have followed a somewhat different course of treatment of the plaintiff under the circumstances involved in this case, there was no direct expert medical evidence to support the charge of negligence or malpractice by Dr. McCool as alleged by the plaintiff. We believe without reviewing in detail the testimony adduced in the trial of this case that the Trial Judge has correctly and accurately analyzed and summed up the pertinent evidence in his oral reasons for judgment as follows:
“The malpractice which was sought to be proven in this case related primarily to the failure of the defendant to timely take additional x-rays. The evidence is clear that the taking of them or the failure to take them on the subsequent visits would have had no basic effect upon the ultimate treatment and the residual disability which the plaintiff sustained to his hand. Assuming, arguendo, that the failure to take these additional x-rays constitute a deviation from the standard of care maintained in this community by members of the medical profession, it would have no bearing on the causation factor insofar as the injuries to the plaintiff are concerned. The evidence is quite clear in that regard. And, even if no effort had been made to accomplish a closed reduction in this case, from the evidence it appears that there still would have been necessary an open reduction some six weeks following the initial injury. In law we do not ask that a vain and useless thing be done, nor can we expect a vain and useless thing to be done by members of the medical profession. If, from the standpoint of treatment or clinical observation, repeat x-rays would not have altered the end re-suit, then by requiring this doctor to make those x-rays or to charge him with malpractice for failing to make them would, in the opinion of this Court, constitute requiring the defendant to do a vain and useless thing.”
It is obvious after reading the voluminous record of this case, that Dr. McCool did follow the general and approved medical practice of his community and the medical profession in treating the plaintiff. The plaintiff’s own negligence in waiting *738 four days to seek medical aid, according to all medical experts, greatly increased the hazard of his having permanent residual limitation of motion in the injured joints, even if they had not become infected.
A careful consideration of all the evidence convinces us that the plaintiff has failed to carry the burden of proof incumbent upon him to show that Dr. McCool failed to do anything he should have done, or did anything he should not have done which would have altered the ultimate outcome, medically speaking, of the healing processes of plaintiff’s injuries.
For the foregoing reasons, the judgment of the lower court in favor of defendants is affirmed, costs to be paid by plaintiff-appellant.
Affirmed.